EBERHARDT, executor, *v.* BENNETT, superintendent, for use, etc.

1. When a conveyance, whether a security deed, a mortgage, or other written instrument, is attacked as having been made to hinder, delay, or defraud creditors of the maker of such instrument, circumstantial evidence is of the highest importance in determining the real intent, the good faith or bad faith, of the grantor. As slight circumstances may raise an inference of fraud, so likewise even slight circumstances are admissible to rebut this inference or imputation. In other words, circumstantial evidence is as available to rebut a charge of fraud as is such evidence proper to prove fraud.

2. The evidence excluded was admissible under the principle announced in the preceding headnote; but it is not every error which will warrant the grant of a new trial. The error must be a substantial one which harms the complaining party by depriving him of something to which he was entitled in the exercise of his right to a fair and lawful trial. In the case at bar the record discloses that the plaintiff in error was permitted to prove substantially everything contained in the testimony which was excluded. The excluded testimony was more specific in its statements as to how and to whom the claimant paid the sums stated to the bank, but the sum of the payments for which the claimant was obligated to the bank as contained in the testimony excluded

Appeal and Error, 3 C. J. p. 689, n. 41; p. 808, n. 91; 4 C. J. p. 830, n. 45; p. 864, n. 33; p. 1004, n. 63, 64; p. 1010, n. 7; p. 1016, n. 47.

Evidence, 22 C. J. p. 747, n. 58; p. 748, n. 60.

Fraudulent Conveyances, 27 C. J. p. 613, n. 82; p. 629, n. 29; p. 630, n. 33; p. 638, n. 11; p. 786, n. 95; p. 803, n. 86, 88; p. 804, n. 97; p. 806, n. 11; p. 807, n. 27; p. 822, n. 57; p. 823, n. 58; p. 841, n. 21.

New Trial, 29 Cyc. p. 783, n. 64; p. 784, n. 68.

Trial, 38 Cyc. p. 1518, n. 69; p. 1522, n. 96.

was several thousand dollars less than the "ten or twelve thousand dollars" thus paid, to which the claimant testified without objection. The purpose of the testimony was to show by evidence that the defendant in fi. fa. had paid all he could to the bank, and that the conveyance attacked was made in good faith; and inasmuch as the testimony in the record shows the payment of a larger sum for that purpose than that shown by the testimony excluded, it was more strongly in support of his contention, and therefore he could not possibly have been harmed by being deprived merely of the privilege of repetition.

3. It is well settled that motive and intention may be shown by conduct in other transactions of a similar nature to that under investigation. For that reason the exception to the evidence of which complaint is made in the second ground of the amendment to the motion for a new trial is not well taken.

4. The testimony with reference to the deed made by the defendant in fi. fa. and the claimant to his wife's sister was admitted without objection; and, upon review on appeal, failure to interpose timely and proper objection must be treated as a waiver of the inadmissibility of the testimony. Even though proper objection had been made to the testimony just referred to, and such objection had been sustained, this would not have required the judge to admit, when offered for a second time, the evidence to which reference is made in the first and second headnotes. A correct judgment can not be produced by a set-off of errors, any more than two wrongs make one right.

5. The jury might have found a verdict in favor of the claimant under the testimony adduced in the trial now under review, but it was not required to do so. The issue of bona fides is peculiarly a jury question; and while a juror may not be authorized to captiously disregard the testimony of a witness who is not impeached in any of the modes prescribed by law, still a juror is at liberty, dependent upon the circumstances of the case, to disbelieve any testimony of any or all of the witnesses in a case.

6. The circumstances were such as to authorize the verdict. The finding of the jury has the approval of the trial judge, and the exercise of his discretion in refusing a new trial will not be disturbed.

No. 5345. FEBRUARY 19, 1927. REHEARING DENIED MARCH 5, 1927.

Claim. Before Judge Hodges. Madison superior court. January 30, 1926.

T. R. Bennett, superintendent of banks, made an assessment at the rate of 50 per cent. upon L. H. Eberhardt as the owner of 10 shares of stock in the Planters Bank of Carlton, Georgia. The assessment not being paid, he issued a fi. fa. for $500, under the provisions of the act of August 16, 1919. (Ga. L. 1919, p. 135.) This fi. fa. was levied on a one-sixth undivided interest in a described tract of land containing 275 acres, more or less, as the property of L. H. Eberhardt. A claim was interposed by L. H. Eberhardt as executor of the will of S. H. Fortson, deceased. The

plaintiff in fi. fa. filed an equitable amendment in aid of the levy, alleging that the security deed from L. H. Eberhardt as an individual to himself as executor of the last will and testament of S. H. Fortson was executed for the purpose of hindering, delaying, and defrauding creditors; and the case went to trial upon this issue. It appears from the record that a note signed by L. H. Eberhardt, dated March 24, 1924, and due one day after date, payable "to the order of the estate of S. H. Fortson, deceased, L. H. Eberhardt, executor, for the use and benefit of said estate, and not to L. H. Eberhardt personally," and the security deed dated March 25, 1924, made to L. H. Eberhardt as executor of the will of S. H. Fortson, deceased, for the use and benefit of said estate and to the heirs at law thereof, Miss May Fortson, Mrs. S. A. Hunt, and Mrs. B. V. Eberhardt, and not to the said L. H. Eberhardt personally, but to him only as said executor and for the use and benefit of said estate and the heirs at law thereof," were made a short time after the Planters Bank of Carlton had been taken over by the State banking department. L. H. Eberhardt, by the will of his father, Jacob Eberhardt, was devised his interest in the land upon which the levy was made. However, this is only a remainder interest subject to the life-estate of his mother, the widow of Jacob Eberhardt, who is still in possession of the premises. This cast the burden of proof upon the plaintiff in fi. fa., who admitted these facts in open court, and that therefore the defendant in fi. fa. was not in possession. L. H. Eberhardt testified that he executed the note and security deed referred to, for the benefit of said estate, to secure a debt of $913; that in transacting the business for the estate he frequently sold cotton and hay, and he kept an account of it. Sometimes he would use his own cotton in defraying expenses, "and this run along until this business got up, and I used up my property in paying the bank some ten or twelve thousand dollars, and I found after doing that that I owed this estate, and I had no other way of paying it except by deeding this property." He then stated to the jury the various items of which the $913 was composed, and introduced the entries upon his ledger in corroboration of this statement. "That is what the note was given for, in settlement of moneys I had gotten at various times and used. It was a genuine debt that I owed to the estate of Fortson, it was cash, and the note was taken to pay that debt

and the deed to secure it. The purpose of the execution of the note and deed was to pay the debt that I owed the estate of S. H. Fortson. There was no intent whatever on my part to hinder, delay, or defraud creditors or any one else. Absolutely I was in good faith in the transaction."

Upon cross-examination he testified that he was the only one who knew about these notes and accounts; that the items he was charging for were for the years 1920, 1922, and 1923; that the bank was put in the hands of the superintendent of banks about March 17, 1924; that he was one of the directors and president of the board of directors of the bank, and "knows pretty much of its financial condition." He admitted that he had no other property when he executed the deed; "that was the only thing I had to finish paying my debts with." He admitted that he had made a deed to his wife of a house and lot and other town property in Carlton, about January 20, 1922, conveying to her his residence and store property of four acres for a consideration of $7,500, money that belonged to his wife of this estate, that she had loaned him. He had testified in another case that he had used his wife's interest in the Fortson estate which she had loaned him, though he does not now remember how much that was, possibly several thousand dollars. On January 8, 1924, he made a deed to his wife's sister, Miss May Fortson, to 500 acres of land for a consideration of about $9,497. There is outstanding against him another execution for $380 stock assessment, with nothing to pay it. Answering the question whether he knew when he was transferring this property to the Fortson estate he was putting it out of reach of the bank, "I didn't think they had to have everything. I had paid the Planters Bank everything I had. That left me absolutely without any property." On redirect examination he testified that he had not testified in a former case that he had used some money of the Fortson estate, "of my wife's interest in the Fortson estate. This had been paid to my wife from the Fortson estate; it was borrowed from my wife. Some of that money came to her from the estate of her two brothers; that never entered into the former case at all. The division had been made between the three sisters, and that money came to me individually. I am indebted to the Planters Bank on some stock assessments, and for two indorsements for other parties. The amount of these notes is about

$4,000." With the introduction of the note, the deed, a certified copy of the will of S. H. Fortson, deceased, and the ledger account of L. H. Eberhardt with the estate of S. H. Fortson, showing items aggregating $923.71, with a credit of $10, the evidence closed.

Upon the rendition of a verdict of the jury finding the property subject to the levy, the claimant filed a motion for a new trial based upon the three general grounds. It was thereafter amended by grounds based upon alleged errors in the exclusion and admission of testimony. One ground complains that the court excluded as irrelevant the testimony of the claimant to the following effect: He had been indebted to the bank in various ways approximately $40,000, and had paid all of this before the bank closed except about $4,000. "One of these debts was the debt of the Carlton Livestock Company, a partnership composed of myself and two other persons, and amounting to $30,000. This debt was paid down by the partnership to a balance of about $4,500, and I have since paid that balance in full. My son owed a debt of $3,100 to the bank, and I paid that debt in full." Another partnership composed of witness, A. H. Eberhardt, and J. M. Comer owed $6,000 to the bank, which was divided into three notes, each one of the partners signing one of the notes as principal and indorsing the other two. The witness paid the note he signed as principal, and his only debt to the bank when it closed was one of the two notes that he indorsed; he made these payments during the financial depression in 1920 and from time to time as he could make them, part of it having been paid after the bank closed.

A second ground assigns error in that the court permitted L. H. Eberhardt to testify, on cross-examination, that the deed "I made to my wife to a house and lot and other town property in Carlton was made, I think, about January 20, 1922. . . I testified in the other trial that the consideration of this property I sold my wife in 1922 was my residence and store property of four acres. Possibly I testified in that trial that part of the $7,500 was money that belonged to my wife of this estate that she had loaned to me." The movant contends that the admission of this testimony was error, for the reason that it related to another trial of a different case, and that said testimony did not illustrate any of the issues in this case, and was harmful to claimant, because it brought into the evidence the wholly irrelevant fact that the defendant in fi. fa.

had conveyed property to his wife in 1922 for a consideration of $7,500, and because it tended to create suspicion that the deed to his wife was fraudulent, and to lead the jury more readily to believe that the deed to claimant was fraudulent.

In another ground complaint is made because after the court, over claimant's objection to the foregoing testimony, had permitted the claimant Eberhardt to testify on cross-examination as just recited, and after the plaintiff in fi. fa. had also elicited from him testimony to the effect that he had made a deed to his wife's sister, Miss May Fortson, to 500 acres of land for about $9,497, thereafter excluded as irrelevant the testimony to which reference is made in the first ground, supra.

The court refused a new trial, and the claimant excepted.

*Berry T. Moseley* and *Erwin, Erwin & Nix,* for plaintiff in error.
*Clarence E. Adams,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) There was only one issue before the jury in this case, and that was whether the security deed executed by L. H. Eberhardt as an individual to himself in his representative capacity as executor of the estate of S. H. Fortson, deceased, was fraudulent and should be avoided because it was executed for the purpose of hindering, delaying, or defrauding his creditors. We shall first consider the amendment to the motion for a new trial; for if the court erred in the rulings upon the admissibility of the evidence of which complaint is made, the claimant's case was prejudiced, and the result of the trial which was adverse to him was naturally materially affected. If the rulings as set out in the amendment to the motion for a new trial afford no real ground for complaint, it follows in this case that there should not be a reversal; for there is no exception to the charge of the court, and the evidence pro and con on the single issue presented is sufficient to have authorized a finding either in behalf of the plaintiff in fi. fa. or of the claimant.

1. Did the court err in excluding the testimony of the claimant to the effect that, out of approximately $40,000 which he was indebted to the bank in various ways when the financial depression came on, he had paid all but $4,000, and the testimony which specified and identified each of the items of debt composing these payments aggregating more than $35,000? The paramount feature, the crux of the case, was the good faith or the fraudulent

intent of the defendant in fi. fa. The witness was the defendant in fi. fa., though in his representative capacity he was also the claimant; and it is urged upon us that as even slight circumstances may raise an inference of fraud, so even slight circumstances are admissible to rebut this imputation or inference. We recognize the rule just stated. When a conveyance, a security deed, or a mortgage is attacked as having been made to hinder, delay, or defraud the creditors of the maker of such instrument, circumstantial evidence is of the highest importance in determining the good faith or bad faith—the real intent—of the grantor in the execution of the instrument. Direct testimony as to the real intent of the grantor and grantee whose motives are under attack can only be obtained from these interested persons, and consequently necessarily any circumstance that may throw light on their conduct and motive is admissible for the jury's consideration. "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Civil Code, § 4626. In 27 C. J. 822, § 771, the rule of evidence is thus stated: "Since proof of fraud is seldom if ever possible by direct evidence, recourse to circumstantial evidence is a necessity, and there is no kind of action wherein it can be held with greater reason that the fact in issue may be inferred from other facts proved than in cases of this character. Circumstances apparently trivial or almost inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." Circumstantial evidence is as available to rebut a charge of fraud as is such evidence proper to prove fraud. In *Lamkin* v. *Clary,* 103 *Ga.* 631, 637 (30 S. E. 596), this court held: "Where a conveyance is attacked for fraud, any evidence tending to show fraud on the part of the grantor is admissible, and we do not see why the contrary proposition is not true, i. e., that where the grantor and grantee claim that the transaction was bona fide and not made for the purpose of defrauding or delaying creditors, any evidence tending to show the bona fides of the transaction is likewise admissible. The force and effect of such evidence would be for the jury to determine." The rule may also be deduced from *Hayes* v. *Hill,* 105 *Ga.* 299 (31 S. E. 166), that any circumstance supporting an inference of good faith is admissible. See 27 C. J. 804, § 735 et seq. Under the foregoing

principles it seems clear that the claimant was entitled to show, as a circumstance illustrating his good faith in the making of the note and deed to the estate of his testator, that he had already paid the bank represented in this suit by the superintendent of banks every possible cent that he honestly could pay without failing to pay the estate to which he was indebted. We think it plain also that such testimony was admissible for the consideration of the jury, whether the weight which they might attach to it was great or small. What we have said is based upon the proposition that the claimant was entitled to have before the jury the substantial facts embraced in the testimony excluded.

2. However, it is not every error which will warrant the grant of a new trial. To warrant a new trial there must be substantial error, the withholding from a party of a substantial right, which harms him by depriving him of something to which he was entitled in the exercise of his right to a fair and lawful trial. We are of the opinion that the claimant was entitled to show, if he could, that he had made an honest effort to pay every cent that he was indebted to the bank and to corroborate his definite statement of his freedom from any intention to delay, hinder, or defraud his creditors, by any circumstance which would support the inference that his action was bona fide; but we can not hold that the exclusion of the testimony was error in this case. The claimant testified, without objection, that he had paid between ten and twelve thousand dollars of the debts upon which he was liable to the bank before he executed the note and security deed in question; that he had exhausted all his resources except this lone one-sixth undivided interest in remainder; and that he justly owed the $913 to the estate of Fortson, which the note and deed were given to secure, and he had no other way of paying it. As a circumstance there is no substantial difference between this and the testimony which the court excluded. In the testimony excluded he said that he owed the bank practically $40,000 in the beginning; that he and two partners owed $30,000, which was paid down by the partnership to about $4,500, and that he subsequently paid the balance. He paid a debt owing by his son of about $3,100, and he paid $2,000 on a partnership debt, leaving something over $4,000 unpaid. The amount paid to the bank as evidence of good faith as contained in the portion of the testimony excluded does not vary considerably from that in

the record. It would not seem to be material to the jury what were the specific items constituting the aggregate sum. If so, the general statement of the amount paid with the honest intention of seeing that the bank got its money is more favorable to the plaintiff in error than the specification, because the $3,100 owed by his son, as stated by the witness, imposed no legal liability whatever upon the plaintiff in error. Presumably the son is sui juris. Thus there would be only $8,500 of the $40,000 paid by the plaintiff in error, according to the itemized statement of payments, whereas the jury had before it uncontradicted the fact that the plaintiff in error had paid between ten and twelve thousand dollars from his own funds. We can not see how the exclusion of the more detailed statement could have harmed the claimant. If the jury did not or would not believe the result obtained by the subtraction by payments from the original indebtedness, they would not probably have accredited the statement of items submitted to them for their own calculations, the result of which when worked out would have shown that a considerably smaller sum was actually paid than that estimated by the witness himself.

3. There was no error in overruling the objection to the testimony with reference to the property in Carlton, based upon the ground of irrelevancy. The witness was in cross-examination; and though it related to a different transaction, it is well settled that motive and intent may be shown by conduct in other transactions of a similar nature to that under investigation.

4. The testimony of the plaintiff in error on cross-examination, with reference to the deed made by him to his wife's sister, Miss May Fortson, was admitted without objection. If it was irrelevant, proper objection to its admission should have been made at the time it was offered. Even if it was improperly admitted, failure to timely object was a waiver of its inadmissibility. However, error in the admission of the testimony just referred to would not render admissible the testimony dealt with in the first division of this opinion, which was offered by the claimant in rebuttal of the testimony of the witness-claimant on cross-examination, with reference to the transaction with Miss May Fortson. The latter, as stated, was admitted without any objection. A correct judgment can not be produced by a set-off in errors, any more than two wrongs make one right. And so, were it conceded for argument's

sake that it was error to admit the testimony with reference to the debt due and the deed executed to Miss May Fortson, there was no error, as we have just held, in excluding the testimony set forth in the first ground of the amendment to the motion for a new trial.

5. It is contended by counsel for plaintiff in error that the evidence in this case, whether direct or circumstantial, is wholly insufficient to carry a conviction of fraud, or to support the view either that the consideration was fictitious or that there was an intent to hinder, delay, or defraud creditors. It is argued that the testimony of L. H. Eberhardt, showing the existence of the debt to the Fortson estate, is undisputed, and that this testimony should not be arbitrarily rejected without there being some evidence to support the view that this witness was wholly unworthy of belief, and that there is no evidence that authorizes his testimony as to the creation and existence of this debt to be ignored. It is argued that there is no evidence to show that there were any dissatisfied creditors except the plaintiff in fi. fa., nor any evidence to show that there were any debts unpaid save those of the plaintiff in fi. fa. and the claimant. With reference to this it is enough to say that while a juror may not be authorized captiously to disregard the testimony of a witness whom it is not sought to impeach, the jury has the utmost liberty, in the absence of any showing or suspicion that they were affected by prejudice or bias or improperly influenced, to disbelieve any testimony of any or all of the witnesses in a case. This sometimes happens when witnesses are introduced by only one of the parties, and yet the jury returns a verdict in favor of the party who introduced no testimony.

6. It is true that a preference is not invalidated because near relatives of the grantor will benefit by it (*Comer* v. *Allen*, 72 *Ga.* 1), and the preferring of a creditor is expressly permitted in this State. Civil Code (1910), § 3230. But there were circumstances before the jury which would have authorized the verdict returned. Eberhardt was the sole executor of the will of his father-in-law, S. H. Fortson. As executor he kept all the records pertaining to the estate, and he produced no evidence except his own records and statements. There was no showing from any of the parties who he testified paid him the items constituting the $913, corroborating his testimony or in lieu of his evidence. He was an individual transferring his property to his wife and two

sisters-in-law and placing it beyond the reach of other creditors, or the sole other creditor, to wit, the Planters Bank of Carlton. In such cases it is a settled rule of law that failure to produce testimony is a badge of fraud. In *Booher* v. *Worrill,* 57 *Ga.* 235, 239, Mr. Justice Bleckley suggested that the other party to the transaction should have been called to testify thereto. In *Hoffer* v. *Gladden,* 75 *Ga.* 532 (4), it was held: "To sell or mortgage his entire property by an insolvent debtor pending suit is a badge of fraud; and to do so in an unusual mode differing from the manner in which such business is generally transacted, to the extent that suspicion would be excited that the transaction was unfair, is also a badge of fraud." Also that "Failure to produce testimony is a badge of fraud, where the bona fides of the transaction is in issue, and witnesses who ought to be able to explain it are in reach." The making of a deed to a remainder interest in land when the contingency which alone can give possession has not occurred, the making by oneself as an individual to oneself in a representative capacity of a deed conveying such property, admitting insolvency at the time (since this was the last property owned by the debtor), it seems to us would raise sufficient grounds on which to base a verdict that the writings were executed with intent at least to hinder and delay the collection of the grantor's other debts. Furthermore, it does not lie within the mouth of the plaintiff in error to say that the evidence does not show that he had other creditors. There is no presumption upon this point one way or the other, and the burden lay upon him as maker of the deed to show, if the circumstance was available for any purpose, that the fact was that the bank was in fact his only creditor.

In *Cowan* v. *Bank of Rockdale,* 159 *Ga.* 123 (125 S. E. 194), Mr. Justice Hines, delivering the opinion of the court, said: "Our statute makes void all conveyances made with intent to delay, hinder, or defraud creditors (Code (1910), § 3224); and a conveyance, made by a debtor to his creditor, to prefer the latter, but with intent to delay other creditors, is fraudulent in law, although free from actual moral fraud, and such a preferential conveyance is void if the creditor knows of the intention of the debtor to hinder or delay his other creditors." In the present instance the claimant was obliged to know the intention of the debtor, since both of these are at last but one person, L. H. Eberhardt. It can

not be said, as argued by counsel for the plaintiff in error, that the testimony of the claimant, answering the question whether he knew, when he was transferring this property to the Fortson estate, he was putting it out of the reach of the bank, "I didn't think they had to have everything. I had paid the Planters Bank all I had. That left me absolutely without any property," may well be considered as a protest against the implied imputation that the witness was intending to put it out of the reach of the bank. On the other hand, however, the jury could construe the statement as a whole as a definite statement of an intent to prefer the Fortson estate, regardless of any moral fraud, because the witness admitted that he "didn't think they had to have everything." This is an admission that the purpose in making the conveyance to the estate was to keep the bank from having this property or any more property.

*Judgment affirmed. All the Justices concur, except Atkinson, J., dissenting.*

BECK, P. J., and GILBERT, J., concur in the judgment.

ATKINSON, J., dissents on the ground that the judge committed harmful error as against the claimant in rejecting the evidence as complained of in the first special ground of the motion for a new trial to which reference is made in the first division of the opinion.