36394.   THRELKELD *v.* WHITEHEAD.

Decided February 8, 1957—Adhered to on Rehearing
March 28, 1957.

*R. Howard Gordon, Rupert A. Brown,* for plaintiff in error.
*Harold A. Boggs,* contra.

QUILLIAN, J. ■ Both the exceptions to the judgment entered upon the verdict and the first special ground of the motion for new trial are predicated upon the plaintiff in error's contention that the provisions of Code § 8-104 that, "In all cases where the plaintiff has commenced suit for the recovery of a debt, and the defendant, during the pendency of such suit, shall become subject to attachment, the plaintiff may have an attachment against the defendant, and all the proceedings in relation to the same shall be as prescribed in relation to attachments where no suit is pending. A satisfaction of the judgment in the common-law action shall satisfy the judgment in attachment, and a satisfaction of the judgment in attachment shall satisfy the judgment in the common-law action," do not apply to a fraudulent-debtor attachment issued pending a common-law suit to recover the same debt or demand, and that a judgment in the common-law suit precludes recovery in the fraudulent-debtor attachment proceeding.

Code § 3-601 provides: "No suitor may prosecute two actions in the courts at the same time, for the same cause, and against the same party, and in such a case the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously; and the pendency of the former shall be a good defense to the latter, if commenced at different times"; and Code § 28-105 reads: "The creditor may not pursue the person and property of the debtor at the same time, except in cases specially provided for; but the process last sued out shall be void."

There are other Code sections stating in different applications the general rule that there can be but one suit and one recovery on the same cause of action. Code §§ 3-607, 110-501. If the provisions of Code § 8-104, as contended by the plaintiff in error, extend only to attachments issued under Code § 8-101 and not to fraudulent-debtor attachments issued under Code § 8-401, the plaintiff in error's position is correct, and the attachment proceeding in which the judgment excepted to was obtained was void, and the judgment must be set aside.

Special ground 1 of the motion and the exception to the judgment for new trial assert that the judgment rendered in a prior common-law action on the promissory note, which was also the

cause of action in the fraudulent-debtor attachment proceeding, exhausted all rights that the plaintiff had to recover on the note, and that the verdict rendered in the attachment proceeding was illegal.

In order to understand clearly the plaintiff in error's contention—that, despite the provisions of Code § 8-104, which apparently confer upon those seeking recovery in common-law actions the right to procure the issuance of fraudulent-debtor attachments on the same cause of action as is the basis of the common-law suit, and to prosecute such attachment proceedings to judgment, that the section mentioned does not give such right, and that the issuance of a fraudulent-debtor attachment cannot be obtained and prosecuted to judgment when a suit for the same debt or demand is pending—it is necessary to observe the language of the section and review some of the legislative history of attachments in Georgia.

The section as it presently appears in the Code of 1933 reads: "In all cases where the plaintiff has commenced suit for the recovery of a debt, and the defendant, during the pendency of such suit, shall become subject to attachment, the plaintiff may have an attachment against the defendant, and all the proceedings in relation to the same shall be as prescribed in relation to attachments where no suit is pending. A satisfaction of the judgment in the common-law action shall satisfy the judgment in attachment, and a satisfaction of the judgment in attachment shall satisfy the judgment in the common-law action."

In 1856 the General Assembly enacted a statute (Ga. L. 1855-56, p. 25), the first section of which read: "Be it enacted, &c., Process of attachment may issue in the following cases: 1st. When the debtor resides out of this State. 2d. When he is actually removing, or about to remove without the limits of any county. 3d. When he absconds. 4th. When he conceals himself. 5th. When he resists a legal arrest. 6th. When he is causing his property to be removed beyond the limits of this State."

Section 28 of the same act reads: "In all cases where the plaintiff has commenced suit for the recovery of his debt, and the defendant, during the pendency of such suit, shall become subject to attachment, agreeable to the first section of this act, the

plaintiff upon complying with the provisions of this act, in relation to the issuing of attachments, may have an attachment against the defendant and all the proceedings in relation to the same shall be, as hereinbefore prescribed, in relation to attachments, where no suit is pending. And a satisfaction of the judgment in the common-law action shall satisfy the judgment in attachment, and a satisfaction of the judgment in attachment shall satisfy the judgment in the common-law action." It clearly appears that Section 28 of the act of 1856 referred exclusively to an attachment obtained on the grounds prescribed. Moreover, when the attachment law of 1856 was enacted, fraudulent-debtor attachments were unknown to Georgia law.

The acts of 1873 (Ga. L. 1873, p. 29) first afforded the remedy of fraudulent-debtor attachments, but made no provision that they might be obtained pendente lite. Code § 3264 (1882), was substantially the same as the first paragraph of the act of 1856. Code § 3280 (1882), which was a codification of § 28 of the act of 1856, contained exactly the same language except that, instead of the words "shall become subject to attachment, agreeable to the first section of this act," it contained the words "shall become subject to attachment, agreeable to Section 3264 of this Code." So it is obvious that the last-mentioned section, just as did the original act, confirmed the right to obtain attachments pending common-law suits on the same acts as those obtained on the grounds prescribed by the first section of the act of 1856 and Code § 3264 (1882), and did not include the right to obtain fraudulent-debtor attachments pending common-law actions.

On December 16, 1895, the Code of 1895 was adopted as the official Code of Georgia. Section 4526 of that Code was in the identical language of Code § 3280 (1882), except that deleted from it, was the clause confining attachments obtained pendente lite to those obtained on the 6 grounds provided by the first section of the act of 1856 or codification of that section. Thus Code § 4526 (1895), by omitting the clause, extended the remedy of attachment pending a common-law action to fraudulent-debtor attachments. The omission of that clause from Code § 4526 (1895), effected such a material and drastic change in the remedy afforded by the older section, in extending the

right to obtain purchase-money and fraudulent-debtor attachments pending common-law suits on the same causes of action, whereas that remedy had only been available in attachment proceedings under what is now Code § 8-101, that it is improbable that the General Assembly, in adopting the Code of 1895, did not intentionally make the change and broaden the scope of the remedy. In this connection it must be observed that a thorough examination of Code § 3280 (1882) and Code § 4526 (1895) reveals that the difference made by the omission of the clause was to make available the remedies of purchase-money and fraudulent-debtor attachments in common-law actions under the provisions of the Code of 1895, such remedies obviously not existing when the Code of 1882 (revised) was the statute law of the State.

But if the intention of the legislature was then in doubt, when, after the lapse of more than fourteen years, Code § 5071 (1910) was adopted, identical with Code § 4526 (1895), the doubt would be diminished if not dissipated altogether. It would seem improbable that two codifying legislatures would by inadvertence overlook a matter so important and so apparent.

This view is fortified by the fact that, during the interim between the adoption of the Codes of 1895 and 1910, the trial courts applied the new remedy, affected by the omission of the clause which had appeared in Code § 3280 (1882), and this court, without commenting that there was any question as to the new remedy's validity, reviewed a case in which it had been permitted by the trial court. *Johnson & Son* v. *Friedman-Shelby Shoe Co.*, 15 *Ga. App.* 561 (83 S. E. 969). If the trial courts had been without authority to apply the remedy to attachments not obtained under the section of the act of 1856 embodied in § 3264 of the 1882 Code, it is improbable that the Court of Appeals would have overlooked the matter.

But the entire evidence of the legislative intent in deleting the clause referred to in re-enacting Code § 3264 (1882) is not included in what has been related. Code § 8-104 (1933) in other respects corresponds to Code § 3280 (1882), as did Code §§ 4526 (1895) and 5071 (1910). The Codes of 1895 and 1910 omitted the clause that would have limited its application to attachments

obtained under Code § 8-101 (1933) (§ 1, act of 1856), and thus extended the remedy afforded by it previously to all types of attachments, including fraudulent-debtor attachments.

This is not to intimate that error gains immunity from correction by reason of antiquity, but is rather to express the opinion that a statute which by legislative recognition and judicial countenance has remained of force for more than six decades, hardly came into existence and continued through mere oversight or inadvertence.

We have thoughtfully read the cases of *Clark* v. *Newsome*, 180 *Ga.* 97, 99 (178 S. E. 386), *Central of Georgia Ry. Co.* v. *State*, 104 *Ga.* 831, 840 (31 S. E. 531, 42 L.R.A. 518), *Rogers* v. *Carmichael*, 184 *Ga.* 496, 504 (192 S. E. 39), and *Mitchell* v. *Georgia & Alabama Ry.*, 111 *Ga.* 760, 768 (36 S. E. 971, 51 L.R.A. 622). Particularly interesting is the rule pronounced in *Lamar* v. *McLaren*, 107 *Ga.* 591, 599 (34 S. E. 116): "The rule is that, unless the contrary manifestly appears from the words employed, the language of a Code section should be understood as intending to state the existing law and not to change it." We have applied the rules laid down in the cases above referred to in deciding whether the clause of § 28 in the act of 1856, and the similar phrase contained in Code § 3280 (1882) were inadvertently or were intentionally deleted from the Codes of 1895, 1910, and 1933.

Another case that has been considered in arriving at what we believe to be the correct decision in the instant case is *Maddox* v. *First National Bank of Jefferson*, 191 *Ga.* 106 (11 S. E. 2d 662). In that case practically all of the previous decisions of our appellate courts are referred to. The conclusion seems to us to be inescapable that, whereas in this case the change in a Code section was so conspicuous as to demand the inference that it was noticed by the law-making body, and especially where after the change is made by the adoption of a new Code, it is confirmed by legislative enactments of two subsequent Codes, that the General Assembly intended to make the change. Moreover, where, after the change is made, it appears in three different Codes and for a period of sixty-three years as the subsisting statute law of the State, we think that it should be so accepted.

Consequently, we hold that the exception to the judgment and the first special ground of the motion for new trial do not show error.

■ The second of the only two special grounds of the motion for new trial contends that the trial judge, though no written request was presented to him, erred in failing to instruct the jury as to the provisions of Code § 28-301: that "A debtor may prefer one creditor to another, and to that end he may bona fide give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer choses in action as collateral security, the surplus in such cases not being reserved for his own benefit."

The trial judge must instruct the jury in reference to the material issues in the case that are made by both the pleadings and evidence.

The pleading in the case raised the simple issue as to whether the defendant, plaintiff in error here, was selling his property for the purpose of avoiding the payment of the debt for the recovery of which the attachment was instituted. The charge was coextensive with the pleadings.

The defendant did testify that he intended to use the money arising from the sale of his property in paying some debts he owed to creditors other than the plaintiff, and simply exercising the right conferred upon him by Code § 28-301 to prefer creditors. There were no pleadings that specifically raised this issue. The rule is well established: "Where in a civil case the judge, in stating the contentions of the parties, fully and fairly submitted the issues raised by the pleadings in the case, the failure of the court, in the absence of a request, to instruct the jury upon a contention of one of the parties not raised by the pleadings, although supported by some evidence in the record, is not cause for a new trial." *City of Brunswick* v. *Glogauer*, 158 *Ga.* 792 (4) (124 S. E. 787); *Martin* v. *Nichols*, 127 *Ga.* 705 (56 S. E. 995); *Cordele Sash, Door &c. Co.* v. *Wilson Lumber Co.*, 129 *Ga.* 290 (2) (58 S. E. 860); *Hewitt* v. *Lamb*, 130 *Ga.* 709 (2) (61 S. E. 716, 14 Ann. Cas. 800); *McLean* v. *Mann*, 148 *Ga.* 114 (2) (95 S. E. 985); *Bridges* v. *Williams*, 148 *Ga.* 276 (2) (96 S. E. 499). Moreover, even if such request had been made in

writing, the evidence contained in the record did not authorize the charge requested. Code § 28-301 applies to conveyances to preferred creditors and liens given them by the debtor, but not to conveyances of the debtor to third persons for the purpose on the debtor's part of raising funds to apply to the obligations held by creditors he intends to prefer above others.

That the verdict was without evidence to support it, was the only general ground of the motion for new trial insisted upon by the plaintiff in error. There was some evidence to sustain the finding of the jury, and the ground must be held to be without merit.

The plaintiff in error does contend in connection with the general grounds that the evidence submitted in proof of his plea of non est factum demanded a verdict in his favor. The evidence submitted on the trial disclosed that the question of the genuineness and validity of the note which was the basis of the attachment proceeding has been conclusively adjudicated by the judgment previously rendered in the common-law action for the money of the debt evidenced by the note.

*Judgment affirmed. Gardner, P. J., Carlisle and Nichols, JJ., concur. Felton, C. J., and Townsend, J., dissent.*

### On Rehearing.

The plaintiff's proof showed: that the defendant owed him a debt which had been reduced to judgment before the trial of the instant case in the trial court; that, pending the suit that resulted in the judgment, the defendant had actually sold farm equipment owned by him to one who was not a creditor. This created a presumption that the allegation of the petition that the defendant was selling his property to hinder, delay and fraudulently defeat the plaintiff in the collection of the debt sued upon, was true. The law is well settled that a conveyance to a person other than one of his creditors made pending a suit instituted by his creditor on a money demand is evidence that the conveyance is fraudulent and made to hinder the creditor in the collection of the demand sued upon. "On the trial of the issue whether a conveyance is fraudulent against creditors, it is competent for the plaintiff in fi. fa. to prove the pendency of suits against the debtor at the time of the execution of the deed." *Barber* v. *Ter-*

*rell,* 54 *Ga.* 146 (5); *Colquitt* v. *Thomas,* 8 *Ga.* 258 (7); *Bozikis* v. *Anestos,* 33 *Ga. App.* 422 (1, 2) (126 S. E. 555). The defendant contended and the plaintiff's proof showed that the defendant did not have a clear title to the equipment but that the Merchants & Farmers Bank held a bill of sale in which the equipment was conveyed for the purpose of securing a debt owed by the defendant to the bank. The defendant contended that he was selling the equipment not only for the purpose of paying the bank, but also to obtain money with which to discharge other liens against the equipment held by Mose Gordon Lumber Company and Westbrook Motor Company. On the trial the defendant testified that this was his intention. He introduced three notes in evidence; one for the principal sum of $633, executed on April 15, 1953, and made payable to Trussell Equipment Company. Entered on this note was a transfer to Mose Gordon Lumber Company from the Citizens & Southern Bank, dated January 14, 1954. The transfer did not reveal the consideration for which the note was transferred, nor did the note show any credits. This note showed no credits and the transfer to Mose Gordon Lumber Company did not disclose its consideration. The first of these notes was in the form of a conditional-sale contract, the second was a bill of sale to secure a debt and contained a description of the property it conveyed as "B/S farm equipment." No transfer of title to these instruments from the Trussell Company to the Citizens & Southern Bank appeared on the papers or from the record. The defendant introduced a conditional-sale contract for $1,440 dated April 23, 1949, payable to Westbrook Motor Company, Inc., and covering a part of the defendant's farm equipment. This note showed no credit. The defendant testified that he telephoned Mose Gordon, and Gordon told him to sell the machinery and bring the money to him. His testimony included the statement "Yes, I owe all the note calls for to Mose Gordon now on this tractor." He did not designate to which of the two notes held by Mose Gordon Lumber Company this reference was made. He made no statement as to what balance was due on his note to Westbrook Motor Company. The defendant further related that after the equipment was levied upon, and subsequent to having obtained its release from the

levy of attachment by giving the replevy bond which appears in the record, he delivered the equipment to Mose Gordon Lumber Company and the Westbrook Motor Company, Inc. He did not state upon what terms or for what consideration this was done.

The plaintiff omitted by his own testimony to divulge material evidential facts essential to the determination of the issue of his good faith in the sale of his equipment, and that was the most important issue in the case. These facts were: 1. The price at which he sold the equipment to C. L. Gordon, the value of the equipment and the amount of the debts he owed to the Bank, Mose Gordon Lumber Company and Westbrook Motor Company. 2. The basis on which he turned the equipment over to Mose Gordon Lumber Company and Westbrook Motor Company after it was levied upon and possession of it obtained by giving the replevy bond. The defendant, though he could have established these facts by the books of the Mose Gordon Lumber Company, Westbrook Motor Company and the Merchants & Farmers Bank and the testimony of the employees of those concerns in charge of the books, that they actually were the notes in the form of retention-of-title contracts and bills of sales to secure debt, that he testified constituted liens on the equipment at the time it was sold by him to C. L. Gordon, and just what balance, if any, was at the time of the sale to Gordon owing on the notes. He could have produced Mose Gordon and officers of the Westbrook Motor Company to corroborate his statements that he had, after the levy on the machinery was dissolved by him giving a replevy bond, actually returned the machinery to them.

The defendant did not by his own testimony, or by material evidence within his control, furnish to the jury data from which they could decide whether he acted in good faith when selling the machinery to C. L. Gordon pending the plaintiff's suit brought against him on a money demand.

In *Hoffer* v. *Gladden*, 75 *Ga.* 532 (5), it is held: "Failure to produce testimony is a badge of fraud, where the bona fides of the transaction is in issue, and witnesses who ought to be able to explain it are in reach."

The defendant had material evidence within his reach by

which the essential facts omitted from his testimony could have been supplied, and his own testimony, so far as it went corroborated. This evidence was: 1. Books of the Mose Gordon Lumber Company, Westbrook Motor Company and the Merchants & Farmers Bank to show what balance, if any, he owed those concerns at the time he sold the equipment to C. L. Gordon. 2. The testimony of Mose Gordon that his company actually held the notes introduced in evidence and purportedly transferred to him at the time the sale was made by the defendant to C. L. Gordon. 3. The testimony by an officer or employee of the Westbrook Motor Company that it actually held the note introduced in evidence and which was originally made payable to it. 4. Testimony of Mose Gordon and that of an officer or employee of the Westbrook Motor Company, familiar with the facts, as to the terms under which the equipment in question was delivered to those concerns by the defendant. 5. Testimony of some witness as to the value of the equipment and the price at which it was sold by the defendant to C. L. Gordon.

*Hayes* v. *Hill,* 105 *Ga.* 299 (31 S. E. 166), *Eberhardt* v. *Bennett,* 163 *Ga.* 796, 802 (137 S. E. 64), and *Lamkin* v. *Clary,* 103 *Ga.* 631, 637 (30 S. E. 596), in similar but slightly differently worded pronouncements, held that circumstantial evidence is of great importance in showing the intent of a debtor to hinder, delay or defraud creditors.

"When a conveyance, a security deed, or a mortgage is attacked as having been made to hinder, delay, or defraud the creditors of the maker of such instrument, circumstantial evidence is of the highest importance in determining the good faith or bad faith—the real intent—of the grantor in the execution of the instrument. Direct testimony as to the real intent of the grantor and grantee whose motives are under attack can only be obtained from these interested persons, and consequently necessarily any circumstance that may throw light on their conduct and motive is admissible for the jury's consideration. 'Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence.' Civil Code, § 4626. In 27 C. J. 822, § 771, the rule of evidence is thus stated: 'Since proof of fraud is seldom if ever possible

by direct evidence, recourse to circumstantial evidence is a necessity, and there is no kind of action wherein it can be held with greater reason that the fact in issue may be inferred from other facts proved than in cases of this character. Circumstances apparently trivial or almost inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof.'" *Eberhardt* v. *Bennett,* 163 *Ga.* 796, 802, supra.

It may be observed that the fraudulent intent of a debtor to hinder, delay and defraud creditors can seldom be proved except by proof of the badges of fraud, the indicia of intent in the conduct of the debtor.

These badges of fraud appear in some instances from affirmative conduct of the debtor, such as the conveyance of his property pending a suit against him on a money demand to the payment of which his property might be applied, if not placed beyond the reach of a fieri facias issued upon a judgment obtained in the pending suit. The purpose to hinder, delay and defraud creditors may be inferred from what the debtor omits to do. Such an instance is found in the defendant's failure to produce material evidence which tends to repel the charges of fraud made against him and to show his good faith in the transaction under investigation.

Another pronouncement helpful in deciding this case is found in *Lamkin* v. *Clary,* 103 *Ga.* 631, 637, supra: "Where a conveyance is attacked for fraud, any evidence tending to show fraud upon the part of the grantor is admissible, and we do not see why the contrary proposition is not true, i. e., that where the grantor and grantee claim that the transaction was bona fide and not made for the purpose of defrauding or delaying creditors, any evidence tending to show the bona fides of the transaction is likewise admissible. The force and effect of such evidence would be for the jury to determine." Similar holdings are found in *Lewis* v. *Lewis,* 210 *Ga.* 330, 332 (80 S. E. 2d 312) ; *Fields* v. *Marchman,* 179 *Ga.* 613 (176 S. E. 635) ; *Blevins* v. *Pittman,* 189 *Ga.* 789 (6) (7 S. E. 2d 662).

While the plaintiff's proof was largely circumstantial we think

it was sufficient to prima facie prove the allegation of the petition, that the defendant was selling his personal property for the purpose of hindering, delaying and fraudulently preventing the plaintiff in the collection of the debt upon which suit had been previously filed.

We are of the opinion that the defendant's evidence did not conclusively disprove that submitted by the plaintiff, and that the case was one for the jury.

Evidence of the defendant's insolvency was not an element of proof necessary to prove the cause laid in the petition. *Keeter* v. *Bank of Ellijay*, 190 *Ga.* 525, 528 (9 S. E. 2d 761).

FELTON, C. J., dissenting. 1. I think that the court erred in not charging the law on a debtor's right to prefer creditors, etc. A denial of the allegation that the defendant intended to defraud creditors, and evidence to the effect that the defendant intended to pay some creditors and not others, required the charge without a request.

2. I do not think that the evidence authorized a finding that the defendant intended to defraud creditors. The evidence as I understand it showed that the defendant proposed to sell one piece of property in order to pay off incumbrances on it, and that he intended to pay on debts the excess over the incumbrances. There is no evidence on the question of the solvency or insolvency of the defendant. I know that proof of insolvency of the debtor is not absolutely necessary to show fraudulent intent, but I think that in this case it was necessary to show insolvency or some other evidence of fraudulent intent. I do not think that the mere intention to sell property and use the proceeds to pay debts while a suit is pending raises a presumption of intention to defraud creditors. But even if it does, the testimony of the defendant to the contrary is consistent with the circumstantial evidence tending to show fraudulent intent.

I am authorized to say that Townsend, J., concurs in this dissent.