William BOND et al., Plaintiffs,

v.

Alton WHITE et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

TWIGGS COUNTY, GEORGIA, et al.,
Defendants.

Civ. A. Nos. 2795, 2825.

United States District Court,
M. D. Georgia,
Macon Division.

Jan. 7, 1974.

Howard Moore, Jr., Elizabeth R. Rindskopf, John R. Myer, Atlanta, Ga., Jack Greenberg, Charles Stephen Ralson, Eric Schnapper, New York City, for plaintiffs, Bond and others.

William J. Schloth, U. S. Atty., Macon, Ga., David L. Norman, Asst. Atty. Gen., Washington, D. C., Civil Rights Division; Jerry E. Keith, Atty., Voting & Public Accommodation, Dept. of Justice, Washington, D. C., for the U. S.

George C. Grant, Martin, Snow, Grant & Napier, Macon, Ga., B. Rabun Faulk, Jeffersonville, Ga., for defendants.

OWENS, District Judge:

These actions were brought under section 5 of the Voting Rights Act of 1965. Title 42 U.S.C. § 1973c.[1] The plaintiffs

---

1. Section 1973(c) provides: Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determina-

challenged a Georgia statute enacted in 1971 which changed the procedure for nomination and election of the county commissioners of Twiggs County, Georgia, to wit: Ga.Laws, 1971, p. 3546.

This statute was declared invalid and unenforceable by the February 6, 1973, Order of a court of three judges and by Order of October 29, 1973; that court of three judges determined that the remaining issues were to be decided by the initiating judge sitting as a single judge and dissolved itself.

The issues which remain to be decided are (1) in what manner future elections for Twiggs County Commissioners should be conducted and (2) whether the court should award attorneys fees to the private plaintiffs in civil action 2795. The parties have stipulated to the evidence.

■ Future elections for commissioners of Twiggs County should be conducted under the statutes, customs and practice as they stood prior to the adoption of Georgia Laws, 1971, p. 3546, assuming valid statutory changes are not hereafter made. See Perkins v. Matthews, 400 U.S. 379, 394, 91 S.Ct. 431, 27 L.Ed.2d 476, 488 (1971). Plaintiffs contend that under the pre-1971 statutes, customs and practices in Twiggs County, each commissioner was nominated in the primary and elected in the general election only by the voters of his district. Defendants agree that the primaries were conducted on a district basis, but contend that each candidate for commissioner was voted on county-wide in the general election.

The defendant Board of Commissioners of Roads and Revenues for the county of Twiggs was created by act of the legislature of the State of Georgia in 1923. Georgia Laws, 1923, p. 324 et seq. That Act appointed and made the first five commissioners of the defendant board, gave the commissioners power to fill vacancies that occurred during their term of office and provided for the election of successors. Important to our consideration are the following portions of that Act:

"Sec. 2. Be it further enacted by authority aforesaid, That S. C. Jones, B. D. Melton, W. W. Howell, G. F. Cannon and M. S. Faulk are made commissioners of roads and revenues for said county under this Act. That the term of office of said named commissioners shall begin immediately upon their taking the oath and giving bond hereinafter prescribed, and shall continue until January 1st, 1925, or until

tions made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: *Provided,* That such qualification, prerequisite, standard, practice, or procedure, may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.

their successors are elected and qualified.

"Sec. 3. Be it further enacted, That successors to said named commissioners shall be elected at the regular election for State house officers to be held in the year 1924 for a period of two years and every two years thereafter the members of said board shall be elected for every two years." p. 325.

In 1950 by Act of the legislature, Georgia Laws, 1950, page 2251 et seq., Section 2 of the aforesaid 1923 Law was stricken in its entirety and in lieu thereof the following new Section 2 was enacted:

"'Section 2. That the County of Twiggs is hereby divided into five districts, and one Commissioner shall be elected in the primary by the people from each district. *A candidate for Commissioner shall be nominated by the voters who reside within his respective district.* Candidates for the office of Commissioner of Roads and Revenues shall be voted on only by the qualified voters residing in the district from which said candidates are running, and the county at large shall not vote upon the nomination of said candidates. The five districts shall be divided as follows: No. 1—Jeffersonville, Marion and Bluff; No. 2—Higgsville and Ware; No. 3—Shadygrove and Tarversville; No. 4—Smith and Pearson; No. 5—McDonald and Hammock. *One Commissioner shall be elected for each district from the territory embraced in such district,* and said Commissioner must reside in the district from which he is elected.'" p. 2252 (emphasis added).

In 1957 the legislature, subject to a referendum of the voters of Twiggs County, enacted a statute which would have again stricken Section 2 in its entirety and caused it to read:

"'Section 2. The County of Twiggs is hereby divided into five commissioner districts as follows:

"'Commissioner district No. 1: Jeffersonville, Marion and Bluff Militia Districts;

"'Commissioner districts No. 2: Higgsville and Ware Militia Districts;

"'Commissioner district No. 3: Shadygrove and Tarversville Militia Districts;

"'Commissioner district No. 4: Smith and Pearson Militia Districts;

"'Commissioner district No. 5: McDonald and Hammock Militia Districts.

"'One commissioner shall be elected for each district and the commissioners elected for the district must reside in the district that he represents. The commissioners shall be elected by the voters of the entire county. Any political party holding a primary for the nomination of a candidate as a commissioner shall provide that the nomination be by the voters of the entire county. It is the purpose of this section to provide for the nomination and election of each commissioner by the voters of the entire county.'" p. 3002.

The voters of Twiggs County disapproved of this act and as a result Section 2 remained as enacted in 1950.

The next legislative change was made by the Act that has already been held invalid by this court—Georgia Laws, 1971, p. 3564. It provided:

"An Act to provide that the members of the Board of Commissioners of Twiggs County shall reside within specified militia districts, but that each said member shall be elected by the qualified voters of Twiggs County; to repeal conflicting laws; and for other purposes.

"Be it enacted by the General Assembly of Georgia:

"Section 1. For the purpose of electing members of the Board of Commissioners of Twiggs County, beginning with the general election in 1972, Twiggs County is divided into five Commission Districts: Commission

District one shall be composed of the Jeffersonville and Bluff militia districts; Commission District two shall be composed of the Hammock and McDonald militia districts; Commission District three shall be composed of the Smith and Pearson militia districts; Commission District four shall be composed of the Tarversville and Shady Grove Militia Districts; and Commission District five shall be composed of the Higgsville and Ware militia districts. Each candidate for the Board of Commissioners of Twiggs County shall reside within the Commission District from which he offers for election, but the qualified electors of the entire County of Twiggs shall vote for members of the Board of Commissioners. No person shall be eligible to represent a district unless he shall have been a resident of the district from which he offers for election to the Board of Commissioners for at least one year immediately preceding the date of the election. In the event a member moves his residence from the district he represents his position on the board shall immediately be vacant.

"Section 2. All laws and part of laws in conflict with this Act are hereby repealed." p. 3565.

The stipulated facts show that "prior to the August 8, 1972, primary election, candidates for County Commissioner were nominated on a district basis in Twiggs County." The stipulated facts also show that following the enactment of Georgia Laws, 1950, page 2251, the following general elections, according to courthouse records, were conducted generally on a countywide basis: 1952; 1956; 1960;[2] 1964;[3] 1968. Of those general elections Republican candidates entered only one—1968—and of those no Republican offered for county commissioner. Testimony offered by the defendants shows that the general elections for which courthouse records are not available—1950; 1954; 1958; 1962;

1966; 1970—were conducted on a county wide basis. A special general election held in 1968 to fill a commissioner vacancy created by death was held on a district basis due, according to the Ordinary, to her then unfamiliarity with the manner in which the general elections had been conducted.

The center of the dispute revolves around the construction of the 1950 Act. Defendants contend that it specifies that primary elections, and only primary elections, are to be conducted on a by the district basis and that pursuant thereto the defendants have conducted only the primary elections on a district basis. Defendants further contend that general elections have been conducted the same as they were before said Act—on a county wide basis.

The Act is certainly not precise. Neither the title nor the provisions of the Act expressly limit its application solely to primaries. Furthermore, the underlined language in the Act would be rendered redundant and meaningless if the statute were construed to apply only to primaries. This language reasonably interpreted refers to both the primary and general election. It, therefore, appears that properly construed the 1950 Act requires that the five commissioners of Twiggs County be nominated in the primary election and elected in the general election solely by the voters of their respective election districts.

The construction of the 1950 statute is buttressed by the clear language of the 1957 and 1971 Acts. The 1957 Act, which was rejected by the voters, and the 1971 Act, which has been invalidated, both purported to provide for election of each and every Twiggs County commissioner by the voters of the entire county. It is a maxim of statutory construction that a statutory enactment is presumed to change the existing law. Undercofler v. Colonial Pipeline Co., 114 Ga.App. 739, 743, 152 S.E.2d 768 (1966); Threlkeld v. White-

---

2. In three of ten precincts voters cast their votes for only one commissioner.

3. In two of ten precincts voters cast their votes for only one commissioner.

head, 95 Ga.App. 378, 384, 98 S.E.2d 76 (1957); Miller v. Southwestern R., 55 Ga. 143 (1875). See Am.Jur. Stat-utes § 337 (1944). Thus, the language of the 1957 and 1971 Acts reinforces the court's view that the 1950 Act provided for both the nomination and election of commissioners on a district basis.

Defendants further contend that in the future the commissioners should be elected by a county wide vote because the established custom and practice in Twiggs County has been to elect commissioners county wide. The evidence shows that the votes for county commissioners in the general elections have usually, but not always, been tabulated on a county wide basis. This evidence must be evaluated in light of the common knowledge of the parties, Twiggs County citizens and the court that historically in this county and this state election contests, if there were contests, were decided in the Democratic primary election, and the victor in the Democratic primary election ran unopposed in the general election.

Indeed, except where special elections have been held, the parties have not produced any evidence showing that a county commissioner Democratic primary nominee has ever been opposed in a Twiggs County general election. See Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Chapman v. King, 154 F.2d 460 (5th Cir. 1946). Thus, the only customs and practices really relevant to this question have been those followed in the Democratic primary—election on a district basis.

The defendants must, therefore, conduct future primary and general elections for Twiggs County commissioners on a district basis with only the voters of each district being permitted to vote on the candidates seeking nomination and election to that district's commission post, until such time as the law is legally changed.

Plaintiffs also pray for the award of attorneys' fees citing cases in-cluding Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971). As the presence of the United States as a party plaintiff demonstrates, this is not a statutory scheme that depends solely on enforcement by private citizens and that, therefore, contemplates the award of attorneys' fees to successful litigants to reimburse them for carrying their congressionally imposed enforcement burden. The *Lee* case, as well as other similar cited cases, does not therefore demand or permit attorneys' fees to be awarded in this case. The court is not aware of any other basis for the court in this case to even consider whether or not to award attorneys' fees. See 6 Moore's Fed. Practice ¶ 54.77[2], p. 1709. Accordingly, the prayer for attorneys fees is denied.