## 49149. EYSTER et al. v. BORG-WARNER CORPORATION et al.

CLARK, Judge.

In this "Products Liability" case we are called upon to decide if the trial judge was correct in directing a verdict for the manufacturer of a heating and air-conditioning system.

Following a fire which caused plaintiffs considerable damage to their residence and household effects this suit was instituted by them against four defendants. These were the manufacturer of the heating and air-conditioning unit, the manufacturer's distributor which had installed the unit, the company which had contracted to inspect, maintain, and repair that unit, and the builder of the house from whom the plaintiffs had purchased their dwelling. Suits of this nature against multi-defendants containing several counts of negligence and breaches of express and implied warranties are now commonplace by reason of today's lawyers being better trained through Continuing Legal Education seminars conducted by the organized bar.

In the instant suit our concern is solely with the negligence count wherein was alleged joint and concurring acts of negligence arising from the

installation of a Borg-Warner heating and air-conditioning unit by its distributor. In performing this task distributor's employees attached aluminum wires from the house electrical network to the copper connector terminals on the unit. This connection, plaintiffs assert, was the causa causans of the conflagration since such a joinder may lead to both creeping (a loosening of the connection) and a hazardous heat build-up. Thus distributor was alleged to have been negligent by installing the unit in an improper and dangerous manner. The negligence of the other defendants revolved around the supposed malfeasance of the distributor. The maintenance concern was charged with negligence in failing to discover the aluminum-copper connection and the manufacturer, Borg-Warner, was said to have been negligent in failing to warn its distributor of the dangers inherent in an aluminum-copper connection. A voluntary dismissal was entered against the builder.

At the conclusion of plaintiffs' evidence defendant manufacturer made a motion for directed verdict in its behalf which was granted by the court. The case then proceeded against the remaining two defendants, the distributor and the maintenance firm. Verdicts were returned for both defendants absolving them of negligence. Judgment was entered in accordance with the verdicts. Thereafter, plaintiffs sought a new trial which was denied. This appeal followed in which the three defendants are appellees. Because plaintiffs have voluntarily abandoned their enumerations of error dealing with the general grounds we are confronted solely with the assignment as to the directed verdict for the manufacturer defendant.

1. A review of the transcript of evidence discloses that, as plaintiffs allege, the manufacturer did in fact fail to warn against the use of aluminum-copper connections. (T. 45, 54). However, the evidence also discloses that (1) the manufacturer's instructions specifically directed the use of copper wire (T. 46, 52); (2) these instructions contained an express limitation that the unit should be installed in accordance with national and local electrical codes, at least one of which warns against the danger of

an improper aluminum-copper connection (T. 54, 111); and (3) it was contrary to generally accepted trade practice to connect aluminum and copper wiring (T. 67).

Furthermore, in cross examining an agent of the defendant manufacturer, counsel for plaintiffs elicited the following: "[D]o you just assume that your dealers will know not to . . . connect aluminum wire to copper connectors? A. Yes, I imagine we would just assume that in that all our reference is made to copper wire. Q. I mean that's a matter of common knowledge in the trade? A. It would be common knowledge, yes. Q. And that's why you don't warn your dealers in that technical manual? A. That's true." (T. 54). Thereby, plaintiffs' evidence demonstrated that those who are franchised to install this Borg-Warner product should, in the ordinary course of events, have been aware of the danger of the questionable connection, since such peril was a matter of common knowledge to those in the trade. More importantly, plaintiffs' evidence showed that it was contrary to the generally accepted practice to connect aluminum and copper wiring. (T. 67).

A review of the manufacturer's instructions contained in a document entitled "Technical Manual" (R. 58-93) substantiates that installation of the unit was not to be performed by laymen but only by trained, experienced technicians who could understand and follow the detailed specifications and who as a part of their trade education should have acquired knowledge of the risk of an aluminum-copper connection.

2. As the specific danger of the aluminum-copper connection was one commonly known to those in the trade, there was no duty on the manufacturer to warn of this hazard. There is no "duty on the manufacturer or seller to warn of obvious common dangers connected with the use of a product." *Poppell v. Waters,* 126 Ga. App. 385, 388 (190 SE2d 815). "Where the product is vended to a particular group or profession, the manufacturer is not required to warn against risks generally known to such group or profession." Frumer & Friedman, Products Liability, Vol. 1, § 8.04, p. 181, n. 3. See also Parker v. State, 201 Misc. 416 105 N.Y.S.2d 735, aff'd 112 N.Y.S.2d 695, wherein it is noted: "There is a manifest distinction

between selling a medical preparation to the public, who may have no knowledge of the dangers attendant upon its use, and making available a preparation to a hospital at its request, whose physicians may be expected to have knowledge of the dangers involved in utilizing the therapeutic preparation ordered by them. Ordinarily, there is no duty to give warning to the members of a profession against generally known risks. 'There need be no warning to one in a particular trade or profession against a danger generally known to that trade or profession.' Shearman and Redfield, Negligence, § 656, at page 1576." And see Annot. 76 ALR2d 9, 28.

3. As appellants' able attorneys argue that certain cases cited in their briefs require a reversal we deem it appropriate to point out the differences between those authorities and the case at bar to illustrate why they are inapplicable.

*J. C. Lewis Motor Co. v. Williams,* 85 Ga. App. 538 (69 SE2d 816) involved a retailer charged with knowledge that the use of a tractor in the absence of a U-shaped exhaust pipe was likely to be dangerous. The factual differences are as follows: (1) There demands were made upon the supplier to provide certain preventive equipment whereas no demand was made in the instant case; (2) in order to make the tractor safe a U-shaped pipe was required as an additional piece of equipment while Borg-Warner provided a completely safe product needing no equipment to prevent injury; (3) as is stated in the *J. C. Lewis Motor Co.* case the retailer's employees had knowledge of the likelihood of danger in the tractor being used without the added equipment whereas the heating unit here was safe and free from defects; and (4) the *J. C. Lewis Motor Co.* case involved a supplier of consumer goods as contrasted to Borg-Warner being manufacturer of an industrial item.

Reddick v. White Consolidated Industries, 295 FSupp. 243 (S. D. Ga. 1969) dealt with a motion to dismiss as contrasted with a directed verdict situation. Additionally, of course, this is a Federal District Court decision which may be persuasive but not authority, so we do not deem it necessary to detail the differences between it and the case at bar.

*Flint Explosive Co. v. Edwards,* 84 Ga. App. 376 (66 SE2d 368) involved dynamite. Enough said!

The only similarity of *Kuhr Bros. v. Spahos,* 89 Ga. App. 885 (81 SE2d 491) was that a furnace was there involved which of course is a heating unit. There the ruling was at the demurrer stage as contrasted with the instant situation where the plaintiffs have presented all of their evidence. Additionally, Kuhr Bros. was the installer, not the manufacturer, and was charged with ". . .the work . . . [having been] so defectively done as to be imminently dangerous." There is no imminent peril in the heat pump manufactured by Borg-Warner.

*Stewart Oil Co. v. Bryant,* 93 Ga. App. 191 (91 SE2d 48) is likewise inapplicable as there in a demurrer situation there was a defective product with knowledge thereof to the seller whereas Borg-Warner had supplied a product without defects.

4. The evidence demonstrates that the danger of an alumimum-copper connection was common knowledge to those generally engaged in the installation of heating and air-conditioning units. Accordingly, the manufacturer was not required to warn against this widely known risk. Where, as is stated in Code Ann. § 81A-150 (a), "there is no conflict in the evidence [concerning the manufacturer] as to any material issue and the evidence introduced, with all reasonable deductions therefrom" demands a verdict for movant as here, the court did not err in granting manufacturer's motion for directed verdict. As was said in *Barnett v. Thomas,* 126 Ga. App. 587, 594 191 SE2d 450): " 'Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of a jury in solving them, except in plain and indisputable cases.' [Cit.] However, where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom, shall demand a particular verdict, the court should direct the jury to find for the party entitled thereto."

5. As we have determined the grant of a directed verdict for the manufacturer defendant was correct and as the general grounds of the new trial motion involving the co-defendants have been abandoned, it is unnecessary

for us to deal with the question so eloquently argued by all attorneys in their briefs concerning the impact upon the co-defendants of a requested reversal.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED MARCH 4, 1974 — DECIDED MAY 1, 1974.

*Burnside, Dye & Miller, Thomas R. Burnside, Jr., Jay M. Sawilowsky,* for appellants.

*Harris, Chance & McCracken, Kenneth R. Chance, Stanley G. Jackson, Hull, Towill, Norman, Barrett & Johnson, Douglas D. Batchelor, Jr., Fulcher, Hagler, Harper & Reed, Gould B. Hagler,* for appellees.