71306. STILTJES v. RIDCO EXTERMINATING COMPANY,
INC. et al.
71307. DETTELBACH PESTICIDE CORPORATION
v. STILTJES.
(343 SE2d 715)

SOGNIER, Judge.

Pamela Stiltjes brought this action against Ridco Exterminating Company, Inc. (Ridco) and Dettelbach Pesticide Corporation (Dettelbach) seeking damages for the alleged wrongful death of her husband. Stiltjes appeals from the trial court's grant of summary judgment to Dettelbach on Stiltjes' claim against Dettelbach for strict liability. Dettelbach cross-appeals from the trial court's denial of its motion for summary judgment on Stiltjes' claims against it for negligence. Ridco is not a party to this appeal although it has filed a brief in opposition to Dettelbach's cross-appeal.

Stiltjes' landlord entered into a pest control agreement with Ridco, a licensed pest control operator, for the treatment of the home occupied by Stiltjes and the decedent. Ridco applied two pesticides, supplied by Dettelbach, a formulator and distributor of pesticide products, containing chemicals known as pyrethrins. Stiltjes alleged that after a third application of the pesticides by Ridco, her husband died of chronic bronchial asthma resulting from the inhalation of the pesticides. She alleged that Dettelbach was liable in negligence and was strictly liable for the wrongful death of her husband for failure to provide adequate warnings and instructions regarding the dangers of the use of pesticides containing pyrethrins around persons such as her husband who suffer from respiratory illnesses. Stiltjes also alleged that Dettelbach was negligent in the testing of the pesticides and/or verification of testing data regarding the pesticides. The trial court held that as a surviving spouse Stiltjes had no standing to bring a

claim based on strict liability for the wrongful death of her husband, but that questions of fact remained as to her claims for wrongful death based on negligence.

1. In Case No. 71306, Stiltjes contends the trial court erred by granting summary judgment in favor of Dettelbach on her claim for strict liability because, contrary to the trial court's holding, Georgia's wrongful death statute provides for such a claim. Because there is no common law cause of action in Georgia for strict liability, a party seeking recovery under that theory must proceed under a statute granting such a right. See *Daniel v. American Optical Corp.*, 251 Ga. 166 (304 SE2d 383) (1983); *Wansor v. George Hantscho Co.*, 243 Ga. 91 (252 SE2d 623) (1979). Two statutes are pertinent here: OCGA § 51-1-11 (b) (Code Ann. § 105-106), regarding strict liability in tort, and OCGA § 51-4-1 (2) (Code Ann. § 105-1301), defining the scope of Georgia's wrongful death statute. Both statutes are in derogation of common law and must be strictly construed. *Ford Motor Co. v. Carter*, 239 Ga. 657, 658-659 (238 SE2d 361) (1977). OCGA § 51-1-11 (b) provides, in relevant part: "(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." The Georgia Supreme Court has held that because this statute by its express language limits a cause of action to "any natural person," no such claim is permitted by a survivor under OCGA § 51-1-11 (b). *Carter*, supra at 663. In *Carter*, the Supreme Court, in examining the predecessors to the two statutes under consideration here, held that a surviving spouse had no claim for wrongful death based on strict liability. Id. The relevant language of OCGA § 51-1-11 (b) is virtually identical to Code Ann. § 105-106 construed in *Carter*, and we must therefore conclude that appellant has no claim in strict liability for wrongful death under OCGA § 51-1-11 (b).

Appellant argues that the wrongful death statute, OCGA § 51-4-1 (2), as amended in 1978 following the decision in *Carter*, supra, permits her claim against appellee for strict liability based on inadequate warnings or instructions regarding its pesticides. That statute provides for recovery to certain survivors (see OCGA § 51-4-2) in "all cases in which the death of a human being results from a crime, from criminal or other negligence, or from property which has been defectively manufactured, whether or not as the result of negligence." While OCGA § 51-4-1 (2) now permits a cause of action based on death from *defectively manufactured* property, this statute must be

strictly construed, "and not extended beyond [its] plain and explicit terms. [Cits.]" *Carter*, supra at 658. Appellant argues that because the language "property which is not merchantable" in the strict liability statute has been construed to mean a defective product, including one which is not "properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions," *Center Chem. Co. v. Parzini*, 234 Ga. 868, 870 (4) (218 SE2d 580) (1975), then the language "defectively manufactured" in the wrongful death statute must be likewise so construed so that appellant's claim falls within its parameters. In effect, appellant argues that the wrongful death statute, as amended, incorporates in its entirety the strict liability statute, OCGA § 51-1-11, thus creating a wrongful death cause of action for any claim authorized under OCGA § 51-1-11.

We disagree. In amending the wrongful death statute in 1978, the General Assembly added a claim for wrongful death resulting from "defectively manufactured" property and did not employ the language of the strict liability statute, "property which is not merchantable," which has been judicially recognized as including property containing inadequate warnings or instructions. *Parzini*, supra at 870 (3), (4). See also OCGA § 11-2-314 (2) (e), which defines "merchantable goods" as including those "adequately contained, packaged, and labeled. . . ." A product may be defective both in its packaging as well as in its manufacture. However, while OCGA § 51-1-11 (b) authorizes claims for both types of defects, see *Parzini*, supra at 871 (6), this court cannot construe Georgia's wrongful death statute beyond its "plain and explicit terms," *Carter*, supra at 658, and thus we hold that the wrongful death statute permits a claim for death resulting from property only where that property is defectively manufactured.

Although we are bound by the express terms of the statutes under consideration, our decision is further supported by an examination of the legislative history of the strict liability statute, Code Ann. § 105-106 (OCGA § 54-1-11 (b)), and the wrongful death statute, Code Ann. § 105-1301 (OCGA § 51-4-1 (2)). The Governor on April 10, 1978, approved a bill passed by the General Assembly amending the strict liability statute to grant a cause of action to any natural person "or the successor of his cause of action" who suffers "death" or injury, etc. 1978 Ga. Laws, p. 2218. The same act extended the scope of Georgia's wrongful death statute to include death from property which has been defectively manufactured. However, the next day, April 11, 1978, a bill passed by the legislature was approved by the Governor, striking Code Ann. § 105-106 in its entirety and substituting a new code section deleting the foregoing quoted language, while leaving the amendment extending the scope of the wrongful death statute intact. 1978 Ga. Laws, pp. 2267-2268. Thus, it is apparent that although the legislature considered and enacted a provision amending

the strict liability statute to grant a cause of action to a decedent's successor for injuries from property which is not merchantable (including property sold without adequate warnings or instructions, *Parzini*, supra at 869 (3)), the legislature later reconsidered and rejected that provision. See generally *Threlkeld v. Whitehead*, 95 Ga. App. 378, 383-384 (98 SE2d 76) (1957); *Miller v. Southwestern R. Co.*, 55 Ga. 143 (1875). Although the result of our construction of these statutes may create the anomalous situation in which a cause of action for a minor burn caused by a product with inadequate warnings will be authorized while a cause of action when the same product results in death will be precluded, "these problems address themselves to the legislature and not to the courts," *Carter*, supra at 663. Therefore, the trial court properly granted summary judgment in favor of Dettelbach on this issue.

2. In Case No. 71307, Dettelbach filed a cross-appeal contending the trial court erred by denying its motion for summary judgment on Stiltjes' claims in negligence. Stiltjes alleged that Dettelbach is liable in negligence for failure to provide adequate warnings and instructions regarding the dangers associated with the use of its products containing pyrethrins around persons such as Stiltjes' decedent, who suffer from respiratory illnesses. Stiltjes also bases her negligence claim against Dettelbach on Dettelbach's alleged negligent testing and/or verification of testing data relating to the potential adverse effect or harm that pyrethrins might have upon persons such as her decedent.

Dettelbach argues that it had no duty to provide instructions or to warn of the potential dangers of its pesticides because the pesticides are sold only to licensed commercial applicators, Ridco in this case, and not to individuals, and because Ridco, as a matter of law, was charged with knowledge of the dangers of the use of pesticides containing pyrethrins around persons such as Stiltjes' decedent. " 'Where the product is vended to a particular group or profession, the manufacturer is not required to warn against risks generally known to such group or profession.' [Cits.]" *Eyster v. Borg-Warner*, 131 Ga. App. 702, 704 (2) (206 SE2d 668) (1974). Evidence submitted by Stiltjes shows that pyrethrins are common pesticide ingredients and are considered so effective as insecticides that they are included in several hundred commercial products and in most household pesticide sprays. Additional evidence in the record indicates that the dangers of skin contact with and inhalation of pyrethrins to persons such as Stiltjes' decedent are known. The record further reveals that Dettelbach sold its pesticides only to professional licensed pest control operators. Under state and federal law such operators are charged with knowledge of the dangers associated with and safe use of pesticides. See OCGA § 2-7-99 (b) (1) (A); Rules of Georgia Department of

Agriculture Pesticide Use and Application § 40-21-3.02 (1978). Under federal law, commercial applicators of pesticides are required to "demonstrate practical knowledge of the principles and practices of pest control and safe use of pesticides," 40 CFR § 171.4 (b), including a knowledge of such safety factors as "(a) Pesticide toxicity and hazard to man and common exposure routes; (b) Common types and causes of pesticide accidents; (c) Precautions necessary to guard against injury to applicators and other individuals in or near treated areas; . . . (e) Symptoms of pesticide poisoning." 40 CFR 171.4 (b) (1) (ii). Therefore, because Dettelbach sold the pesticides in question to Ridco, a professional pesticide control operator charged with knowledge of the dangers associated with those pesticides, Dettelbach had no duty to warn of the known dangers of exposure of pyrethrins to persons such as Stiltjes' decedent, and Stiltjes' contention that a question of fact exists whether or not Ridco knew or should have known of the particular dangers associated with pyrethrins is without merit. See generally *Eyster,* supra at 704 (2), 706 (4).

Further, even assuming Dettelbach did have a duty to warn as Stiltjes contends, it is undisputed that the labels in question, which include precautionary statements concerning potential hazards to humans on contact with the pesticides, meet federal labelling requirements under the Federal Environmental Pesticide Control Act of 1972, 7 USCA §§ 136 (a)-136 (y) ("FIFRA"), thus satisfying any duty to warn on Dettelbach's part. See *Singleton v. Airco, Inc.,* 169 Ga. App. 662, 664 (314 SE2d 680) (1984); *Hawkins v. Richardson-Merrell, Inc.,* 147 Ga. App. 481, 482 (1) (249 SE2d 286) (1978); *Webb v. Sandoz Chem. Works,* 85 Ga. App. 405, 409 (2) (69 SE2d 689) (1952). See also 7 USCA § 136v (b); *National Agricultural Chem. Assn. v. Rominger,* 500 FSupp. 465 (D.C. Cal., 1980). Thus, we also find no merit in Stiltjes' claim that Dettelbach can be held liable in negligence for failure to properly test or verify testing data relating to the dangerous effect of pyrethrins upon persons such as Stiltjes' decedent where those dangers were known and Ridco was charged with that knowledge.

Because there is no question of fact or law that Dettelbach cannot be held liable to Stiltjes based either on its alleged failure to provide adequate warnings or on its alleged negligent testing or verification of testing data regarding the dangerous effect of pyrethrins contained in its pesticide products on persons such as Stiltjes' decedent, the trial court erred by denying summary judgment to Dettelbach on these issues. See generally *Griffith v. Stovall Tire &c., Inc.,* 174 Ga. App. 137, 139 (1) (329 SE2d 234) (1985).

*Judgment affirmed in Case No. 71306. Judgment reversed in Case No. 71307. Birdsong, P. J., and Carley, J., concur specially.*

CARLEY, Judge, concurring specially.

I concur in the judgments that are reached by Judge Sognier. However, I am in fundamental disagreement with the basis upon which the ruling in Case Number 71306 rests. Accordingly, I specially concur in order to articulate the basis of my disagreement with that rationale.

In *Ford Motor Co. v. Carter*, 239 Ga. 657 (238 SE2d 361) (1977), our Supreme Court held that a wrongful death claim could not be based upon strict liability. Admittedly, the legislation enacted subsequent to the *Ford* decision presents a somewhat confusing scenario. Three separate statutes were successively enacted during the 1978 legislative session and eventually signed by the Governor, each purporting to amend our strict liability statute and to repeal conflicting laws. See Ga. L. 1978, p. 2202; Ga. L. 1978, p. 2218; Ga. L. 1978, p. 2267. However, our current wrongful death law is clear: " 'Homicide' includes all cases in which the death of a human being results from a crime, from criminal or other negligence, or from *property which has been defectively manufactured, whether or not as the result of negligence.*" (Emphasis supplied.) OCGA § 51-4-1 (2). The opinion authored by Judge Sognier construes this language as evincing a distinction drawn by the legislature as between a death that is caused by a defect in the manufactured good itself and a death that is caused by a defect in the warnings on or in the packaging of a manufactured good. This construction places too much emphasis on "manufacture" and focuses too little on "defective." The concept of "manufactured property" is one which is *common* to both our strict liability and our wrongful death statutes. In my opinion, the concept of "defective" is likewise common to both statutes.

There is no reason to believe that, when OCGA § 51-4-1 (2) was enacted as an amendment to our wrongful death statute, the phrase "property which has been defectively manufactured, whether or not as the result of negligence" was employed by the legislature so as to draw any distinction whatsoever between the *source* of fatal "defects" in "defectively manufactured" property. To the contrary, there is every reason to believe that the legislative intent was to insure that a wrongful death claim could be pursued under exactly the same set of facts as could any strict liability claim. Unlike Judge Sognier, I construe the 1978 legislative events as a direct reaction by the General Assembly to the *Ford* decision and as evincing an undeniable intent *to authorize* a wrongful death claim that is fully co-extensive with our strict liability statute. See generally Eldridge, Ga. Wrongful Death, § 12-3 (1985 Supp.).

It is true that OCGA § 51-4-1 (2) does not track the literal statutory language of the strict liability code section. The language employed in our wrongful death statute does, however, follow exactly the

Supreme Court's interpretation of our strict liability statute. In the seminal products liability case in this State, the Supreme Court was called upon to interpret the extent of a manufacturer's liability for "personal property" which, when sold, is "not merchantable and reasonably suited to the use intended," the exact language which now appears in our existing strict liability statute. See OCGA § 51-1-11 (b) (1). Our Supreme Court held that, notwithstanding its roots in the law of warranty, this language was the equivalent of imposing strict liability for a "product [that] when sold by the manufacturer was defective. . . . 'Where . . . [the manufacturer] has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger . . . and a product sold without such warning is in a defective condition.' [Cit.]. . . . 'No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole.' [Cit.]" *Center Chem. Co. v. Parzini*, 234 Ga. 868, 869-870 (218 SE2d 580) (1975). Thus, the Supreme Court specifically held that OCGA § 51-1-11 (b) (1) creates a cause of action in tort for injuries resulting from defectively manufactured products, the scope of which "defective manufacture" can encompass either a defect in the product itself, its warning labels, or its packaging. The Supreme Court's interpretation of our strict liability law in *Parzini* became as much a part of that statute as its literal language. See generally *Jones v. Swett*, 244 Ga. 715, 717 (261 SE2d 610) (1979).

The legislature's subsequent employment in the amendment of our wrongful death statute of such language as is totally consistent with the Supreme Court's interpretation of the scope of strict liability evinces a legislative approval thereof, and mandates that a consistent construction be given to OCGA § 51-4-1 (2). "It is presumed that the legislature knows and enacts statutes with reference to the existing law, including the decisions of the courts, and when there is nothing in the enactment to indicate that the words used were to have a new and different meaning they should be construed as having the same meaning that was attached to them before the enactment. [Cits.]" *Buckhead Doctors' Bldg. v. Oxford Fin. Co.*, 115 Ga. App. 52, 55 (153 SE2d 650) (1967). That OCGA § 51-4-1 (2) does not track the exact wording of OCGA § 51-1-11 (b) (1) is not important. That it does track the Supreme Court's interpretation of OCGA § 51-1-11 (b) (1) is dispositive. I see no distinction between "property which has been defectively manufactured, whether or not as the result of negligence" and the Supreme Court's holding in *Parzini* as to a manufacturer's strict liability for defective products.

There is no basis in law or logic for the acknowledged "anomolous situation" that will result from a contrary construction of our

wrongful death statute. The legislature has *already* spoken. To construe "defectively manufactured" property as only that which is intrinsically defective in design, parts or assembly rather than that which is defective in its warnings or packaging is a judicial usurpation of the legislative function. See generally *Jones v. Swett,* supra at 717. Warnings and packaging are as much a component of the manufacturing process as are design, parts and assembly. Thus, contrary to Judge Sognier's opinion, I believe that there *is* a cause of action in this State for wrongful death based upon strict liability, which cause of action is coextensive with OCGA § 51-1-11 (b) (1).

Turning to the merits of the instant case, Mrs. Stiltjes does not contend that Dettelbach's product is any more "defective" than any other insecticide containing pyrethrins. Her sole contention appears to be that pyrethrins are or may be dangerous to those who suffer from respiratory illness. The undisputed evidence of record shows, however, that, as the result of previous scientific testing, this is already a commonly known and recognized possible dangerous side effect associated with pyrethrins. "Many products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable." *Center Chem. Co. v. Parzini,* supra at 870. The uncontroverted evidence of record also shows that Dettelbach sold its insecticide, not to the Stiltjeses, but to Ridco, a professionally licensed pest control operator. "[S]ince the product was sold to a commercial operator which may reasonably have been expected to be familiar with the dangers resulting from [its use], we do not believe that the manufacturer's failure to warn of such dangers may be considered the proximate cause of the injury." *Omark Indus. v. Alewine,* 171 Ga. App. 207, 209 (319 SE2d 24) (1984). Since the evidence shows that the insecticide was sold to a professional and contained a warning which meets federal labeling requirements, Mrs. Stiltjes' cause of action is not in strict liability against the manufacturer of a product which merely contained pyrethrins but against the pest control professional that may have negligently caused her husband to come into contact with that product. Thus, I would affirm the trial court in Case Number 71306 *on the merits.*

I am authorized to state that Presiding Judge Birdsong joins in this special concurrence.

DECIDED MARCH 11, 1986 —
REHEARING DENIED MARCH 27, 1986 — ▮▮▮▮▮▮▮

*Alexander P. LeVorse, Kimberly A. Richardson, John R. Grimes,* for appellant (case no. 71306).
*Michael J. Gorby, Richard P. Decker,* for appellees.

*Richard P. Decker, Stevan A. Miller, Deborah L. Taylor*, for appellant (case no. 71307).
*John R. Grimes*, for appellee.
*Michael J. Gorby, Suzanne Wynn*, amici curiae.