A94A2836. CARTER v. E. I. DuPONT DE NEMOURS & COMPANY, INC.
A94A2840. HARRISON v. E. I. DuPONT DE NEMOURS & COMPANY, INC.
(456 SE2d 661)

SMITH, Judge.

Gary Harrison, an employee for Union Tank Car Company, mis-

takenly hooked an air-driven spot grinder to an unlabeled oxygen line and began working inside a tank car. The oxygen ignited, killing Harrison and causing fellow employee Richard Kevin Carter to be severely burned and injured. Appellants Carter and Sharon Harrison (as administratrix of Gary Harrison's estate) each brought suit against several entities implicated in the incident. Appellee DuPont de Nemours & Company (DuPont) is implicated by the appellants as the developer and manufacturer of the patented "Tyvek" material used to make the coveralls worn by Carter and Harrison — material which allegedly "caught fire" after the oxygen ignited. Appellants alleged that DuPont breached its duty to each of them to warn them of the hazards of wearing Tyvek-based garments near heat, spark, or flame.[1] These appeals are from the grant of summary judgment to DuPont and against each appellant. We have consolidated them for review.

The trial court granted summary judgment to DuPont in these cases based solely on the so-called "learned intermediary" doctrine. See generally *Eyster v. Borg-Warner Corp.*, 131 Ga. App. 702 (206 SE2d 668) (1974). *Eyster* states: " 'Where the product is vended to a particular group or profession, the manufacturer is not required to warn against risks generally known to such group or profession.' [Cits.] . . . 'Ordinarily, there is no duty to give warning to the members of a profession against generally known risks. "There need be no warning to one in a particular trade or profession against a danger generally known to that trade or profession." [Cit.]' " Id. at 704-705 (2).

In determining whether the learned intermediary doctrine enunciated in *Eyster* has any application in the present case, we must first establish the duty that DuPont in essence claims has been satisfied by informing its immediate purchasers. In *Moody v. Martin Motor Co.*, 76 Ga. App. 456 (46 SE2d 197) (1948), this court adopted the first Restatement of Torts, § 388. The substantially similar provision found in Restatement of Torts, 2d, provides: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize

---

[1] According to DuPont, Tyvek melts at 275°F and burns at 650°F. Medical evidence in the case indicates that clothing which melts onto the skin increases the duration of the burning process and the severity of the burn.

its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." See *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 702 (2) (294 SE2d 541) (1982).[2]

While DuPont argues that it sells Tyvek only in bulk to intermediaries or "converters," the flammability of the product remains unchanged after being converted from a "sheet good" to a garment — in this case, coveralls. Also, appellants point out that DuPont has actively promoted Tyvek as a material that may be used to make "protective apparel" for the workplace. It is also noteworthy that the garments are generically referred to as "Tyvek suits," and DuPont pays garment makers to place a "Tyvek" label on the collar. Finally, there is no suggestion that the converter in this case did anything to worsen the flammable characteristics of the material. There is therefore no valid basis to distinguish this case merely because DuPont does not cut and assemble the finished product made from its "sheet good"; that is apparently all that is left to be done in making a "Tyvek suit." See generally *Giordano v. Ford Motor Co.*, 165 Ga. App. 644 (299 SE2d 897) (1983) (despite integration into assembled product, component maker may be held liable where it fails to warn ultimate user of a specific danger inherent in using the component when such danger is not necessarily obvious or generally known to the ultimate user).

The issue presented in this appeal is whether DuPont sufficiently fulfilled its duty *to appellant Carter and Gary Harrison* as a matter of law by informing the assembler of the garments of Tyvek's flammability characteristics. We find the authorities relied upon by DuPont in support of its summary judgments to be inapposite to the facts of the present case.

*Eyster v. Borg-Warner*, supra, is distinguishable because the issue presented there was strictly whether the *installer* of a heating/air conditioning unit should have been warned by the manufacturer of the hazards of using aluminum wiring to power the unit. *Eyster* merely holds that the manufacturer had no such duty because the installer should have already known of the hazard as a matter of law.

Similarly, in *Stiltjes v. Ridco Exterminating Co.*, 178 Ga. App. 438 (343 SE2d 715) (1986), aff'd 256 Ga. 255 (347 SE2d 568) (1986), the plaintiff complained that a pesticide manufacturer failed to warn

---

[2] *Moody* also relied upon the first Restatement of Torts, § 389, which provides: " 'One who supplies directly or through a third person a chattel for another's use knowing that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for bodily harm caused by such use to those whom the supplier should expect to use the chattel or to be in the vicinity of its probable use and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.' " *Moody* at 461.

of the hazards of pesticides containing pyrethrins. The pesticides at issue, however, were not applied by the ultimate beneficiary of the product, but by a professional pest control company chargeable with knowledge that pyrethrins should not be used in the vicinity of persons with respiratory illnesses. As in *Eyster*, it was a patently improper *application* of the product by the group or profession to which the product was vended that caused the harm done; the manufacturer of the pyrethrins had no duty to warn its vendees against an application of its product that was generally known to be improper *and which application the manufacturer did not otherwise recommend.* See also *Exxon Corp. v. Jones*, 209 Ga. App. 373, 375 (433 SE2d 350) (1993) (negligent delivery of LP gas); *Omark Indus. v. Alewine*, 171 Ga. App. 207, 209 (319 SE2d 24) (1984) (negligent implementation or maintenance of hydraulic line).

Other cases citing *Eyster* deal with situations where the user assumed a *known* risk. See *Brown v. Apollo Indus.*, 199 Ga. App 260 (404 SE2d 447) (1991) (danger in using aerosols in high voltage areas " 'common knowledge' " among MARTA's electronic technicians); *Lundy v. Stuhr*, 185 Ga. App. 72, 74 (363 SE2d 343) (1987) (warning given that dog " '[w]ill bite' "). Moreover, where the injury could not necessarily be blamed on the intervening negligence of an intermediary or assumption of the risk by the product's user, we have reversed the grant of summary judgment to the manufacturer. See *Giordano v. Ford Motor Co.*, supra at 644-645 (1) (observing that "in some situations, a duty to warn may be shared by both the component manufacturer and the assembler").

Contrary to the unsupported assertion in its briefs, none of the cases relied upon by DuPont can fairly be read for the proposition that any duty to warn owed by DuPont to Gary Harrison and appellant Carter was conclusively satisfied merely by informing DuPont's immediate customers of the material's characteristics with regard to flammability. In no case have we held that the manufacturer may *always* rely on an intermediary to pass along to the ultimate user warnings of dangers inherent in the use of a product. We find the issue presented in these appeals requires an analysis both more flexible and more deliberate than DuPont urges to be the established law.

We are persuaded that the proper approach to analyzing the application of the "learned intermediary" doctrine in these cases is that applied in *Stuckey v. Northern Propane Gas Co.*, 874 F2d 1563 (11th Cir. 1989). In *Stuckey*, as here, the manufacturer owed a duty to warn the end user of a product hazard under the rule relied upon in *Moody v. Martin Motor Co.*, supra. See also *Beam v. Omark Indus.*, 143 Ga. App. 142 (237 SE2d 607) (1977). Also, as in the present cases, the manufacturer in *Stuckey* argued that it discharged its duty to warn (of the phenomenon of "odor fade") by supplying its product to an

intermediary familiar with the hazard.

The *Stuckey* court relied upon Comment n to § 388 of the Restatement of Torts, 2d, which "addresses when a supplier's duty to warn an ultimate consumer can be discharged by a warning given to an intermediary party. . . ." Id. at 1568. "Comment n provides a test that balances several factors: the burden of requiring a warning; the likelihood that the intermediary will provide a warning; the likely efficacy of such a warning; the degree of danger posed by the absence of such a warning; and the nature of the potential harm." Id.

Such an inquiry has not been actively undertaken by the parties in the present case. A cursory reading of the parties' briefs, however, reveals that it cannot be said DuPont has established its entitlement to summary judgment using the balancing test outlined above. We note in particular that in the mid-1980s, a group of protective garment assemblers adopted various standards relative to the labeling that would be contained within a given garment. In the late 1980s, DuPont ordered its assemblers "as a condition of sale" to adhere to these standards. This at least suggests that DuPont would have little difficulty in requiring garment manufacturers to place warning labels on their Tyvek-based products as a condition of sale informing the ultimate users that such garments should not be worn near heat, spark, or flame.

Appellants also argue that DuPont officials had actual knowledge that the intermediary was not placing such labels on their Tyvek-based clothing products. Finally, there is not even the bare suggestion by DuPont that a warning label would not have been efficacious, or that the dangers posed by the failure to warn and the nature of the potential harm were less than serious.

The trial court erred in concluding that *Eyster* and *Stiltjes*, supra, controlled these cases in DuPont's favor. While we do not preclude the possibility that DuPont may be able to prove other affirmative defenses in these cases, DuPont argues no other basis for affirming the trial court's decisions.

*Judgments reversed. McMurray, P. J., and Pope, P. J., concur.*

DECIDED MARCH 17, 1995 —
RECONSIDERATIONS DENIED MARCH 30, 1995 —

*Reynolds & McArthur, Bradley J. Survant,* for appellant (case no. A94A2836).

*Sutton & Associates, Berrien L. Sutton,* for appellant (case no. A94A2840).

*Elliott & Blackburn, W. Gus Elliott, Alston & Bird, William C.*

*Humphreys, Jr., Jennifer L. Hays,* for appellee.